United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 04, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | § | |
| | § | |
| SEQUOIA GROVE, INC., | § | **No. 25-35441** |
| | § | **Chapter 11** |
| | § | |
| Debtor. | § | |

---

**ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION
PURSUANT TO 11 U.S.C. § 1191(b) (ECF NO. 83)**

---

On January 23, 2026, the Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the Debtor's Amended Plan of Reorganization for Small Business under Subchapter V of Chapter 11 dated December 18, 2025 (ECF no. 63) as supplemented by the First Supplement to Debtor's Amended Plan of Reorganization for Small Business under Subchapter V of Chapter 11 dated December 18, 2025 (ECF no. 72) and the Second Supplement to Debtor's Amended Plan of Reorganization for Small Business under Subchapter V of Chapter 11 dated December 18, 2025 (ECF no. 78) (collectively, the "*Plan*") filed by Sequoia Grove, Inc. (the "*Debtor*").

After hearing comments by counsel for the Debtor, Wells Fargo Bank, N.A., the United States Trustee, and from the Subchapter V Trustee, the Court finds that parties were in support of confirmation of the Plan, as supplemented. The Court then directed the Debtor to combine all of the plan supplements and other modifications into a Second Amended Plan of Reorganization for Small Business under Subchapter V, which is filed at ECF no. 83.

Having considered the Second Amended Plan, the liquidation analysis, the Debtor's financial projections, and the arguments of counsel and the applicable legal authorities, the Court hereby

confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

## I.
## Jurisdiction, Venue & Constitutional Authority

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan.  All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless otherwise indicated.

[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).

[3] 11 U.S.C. § 157(b)(2).

[4] *Stern v. Marshall*, 564 U.S. 462 (2011).

## II.
## Findings of Fact and Conclusions of Law

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This order supplements those findings and conclusions. If there is an inconsistency, this Order controls.

1. On September 16, 2025 (the "*Petition Date*"), the Debtor commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184.

2. On September 17, 2025, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee (ECF no. 10), appointing Tom Howley as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

3. As of the Petition Date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of the Plan under 11 U.S.C. § 1189.

4. The Debtor complied with 11 U.S.C. § 1189(b). The Plan is dated and identifies the entity submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

5. The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted

in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

6.      All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

7.      The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

8.      The Debtor, as proponent of the Plan, has meet its burden of proving the applicable elements of 11 U.S.C. § 1191(b) by a preponderance of the evidence.

Accordingly, it is therefore

**ORDERED** that:

1.      The Debtor's Second Amended Plan of Reorganization for Small Business under Subchapter V of Chapter 11 dated February 3, 2026 (ECF no. 83), attached hereto as **Exhibit A** is hereby CONFIRMED and approved in each and every respect as a non-consensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below (the "*Plan*"). Debtor must contribute 36 months of Projected Disposable Income over the life of the Plan (the "*Plan Period*"). The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date. The terms of the Plan and the Debtor's or Reorganized Debtor's

entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor and Reorganized Debtor is authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2.      To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3.      Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including, without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on the Debtor(s); all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and each

person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7.      The following Nonmaterial Plan Modifications are hereby approved:

In the event the Court orders the Subchapter V Trustee to make payments to Creditors under the Plan, the Subchapter V Trustee shall be compensated for his post-confirmation duties at his normal hourly rate and shall be paid from the Projected Disposable Income. The amount of Projected Disposable Income distributed or reserved to Creditors will be net of the Projected Disposable Income remitted by the Debtor to the Subchapter V Trustee to cover post-confirmation fees and expenses (including any required post-confirmation retainer). The Subchapter V Trustee's fees and expenses shall be disclosed in the quarterly report filed with the Court. All parties in interest will have twenty-one (21) days after the quarterly report is filed to object to the Subchapter V Trustee's fees and expenses disclosed therein. If no objection is received, the Subchapter V Trustee may disburse his fees and expenses from the Projected Disposable Income without further order of the Court. In the event there is no Projected Disposable Income for a quarterly period, the Debtor is authorized to advance payment for the Subchapter V Trustee's fees and expenses. The Debtor is authorized to deduct from the Projected Disposable Income any amounts advanced by the Debtor to pay the Subchapter V Trustee's fees and expenses. In addition, in its sole discretion, the Debtor is authorized to withhold a portion of the Projected Disposable Income it deems necessary to cover the Subchapter V Trustee's future fees and expenses until the case is closed. The Subchapter V Trustee shall file post-confirmation quarterly fee applications within fourteen (14) days of each quarterly report filed with the Court which shall include all compensation received and disclosed in the quarterly reports. The Subchapter V Trustee shall file a post-confirmation final fee application within fourteen (14) days of the filing of the motion for final decree under Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order. Following entry of the Confirmation Order requiring the Subchapter V Trustee to make payments to Creditors under the Plan, any disbursements made by the Subchapter V Trustee on account of a Claim are deemed authorized disbursements, and the Subchapter V Trustee shall have no liability for these disbursements. The Subchapter V Trustee shall have no liability to any person in the event that the Debtor fails to timely deliver funds

to the Subchapter V Trustee or otherwise fails to perform its obligations under the Plan. The Subchapter V Trustee shall have no obligation to make Disbursements on account of Allowed Claims unless and until he determines that there are adequate funds to cover a distribution to Holders from the Projected Disposable Income, net of the Subchapter V Trustee's fees and costs (including any required post-confirmation retainer).

8.      The Subchapter V Trustee must make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b) ("Subchapter V Trustee") on or before the last day of each month (the "Deadline"). After receipt of the plan payments, the Subchapter V Trustee must distribute plan payments in accordance with the terms of this Order and the Plan before the last day of each month until all required payments have been made. If the Debtor fails to make all required plan payments to the Subchapter V Trustee by the deadline, the Subchapter V Trustee must provide notice to Debtor and Debtor's counsel and request payment within seven (7) calendar days of the notice. If Debtor fails to make the required plan payment to the Subchapter V Trustee within seven (7) calendar days of the notice, the Subchapter V Trustee must file a notice of default with the Clerk of Court.

9.      The Subchapter V Trustee must file, a preliminary report at the conclusion of the six (6) months  from entry of the confirmation order and then for the duration of the period in which the Debtor must tender projected disposable income or equivalent values of property under the confirmed plan as required under § 1191(c)(2) (the "Non-Consensual Commitment Period"), a status report on each anniversary date of the entry of the confirmation order which outlines the status of payments made by the Debtor and distributed by the Subchapter V Trustee in the past year and any other post-confirmation action taken toward consummation of the plan and serve that report upon the master mailing list (matrix) as constituted by the Court on the date of service.

10.     Within fourteen (14) calendar days of entry of this Confirmation Order, the Debtor must provide the Subchapter V Trustee with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Subchapter V Trustee to send plan payments. If there are any disputed claims, the Debtor must provide a separate list of such disputed claims and an estimated date of resolution. The Debtor must file a certificate of service with the Clerk of Court indicating that the claim information required by this paragraph has been timely served on the Subchapter V Trustee.

11.     Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may file with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("Disputed or Undetermined Claim"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date. At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Clai

12.     Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed.

Until a disputed claim is resolved, the Subchapter V Trustee must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Subchapter V Trustee must distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Subchapter V Trustee must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

13. Disbursements may be delivered by the Subchapter V Trustee to (i) the address list provided by the Debtor under paragraph 9; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Subchapter V Trustee. If any distribution to a claimant of an allowed unsecured claim is returned to the Subchapter V Trustee as undeliverable, no further distributions shall be made to such claimant unless and until the Subchapter V Trustee is notified in writing of such claimant's correct mailing address, at which time all currently due distributions must be made to such claimant as soon as practicable. Undeliverable distributions must remain in the possession of the Subchapter V Trustee until such time as a distribution becomes deliverable and must not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Subchapter V Trustee is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Subchapter V Trustee must deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

14. The Subchapter V Trustee must file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program.

15.     At the conclusion of the Plan Period and upon completion of Plan payments during such time, the Subchapter V Trustee must file, with the Clerk of Court, a notice of completion of plan payments which documents that all payments of projected disposable income or equivalent values of property by the Debtor under the confirmed plan as required under § 1191(c)(2) have been completed and that all other prerequisites for the entry of an order of discharge pursuant to 11 U.S.C. § 1192 have been fulfilled ("Notice of Plan Completion").

16.     Within thirty (30) calendar days of the filing of the Notice of Plan Completion, the Debtor must file a motion for entry of discharge and a motion for final decree.

17.     Debtor must self-calendar a hearing date on all final motions including a motion for final decree.

18.     The Subchapter V Trustee must file a post-confirmation final fee application within fourteen (14) calendar days of the motion for final decree under Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order.

19.     Upon completion of the Plan, the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

20.     After the filing of the Subchapter V Trustee's final report and resolution of any objection thereto, the Subchapter V Trustee will be discharged, the Subchapter V Trustee's bond will be cancelled, and the case will be closed.

21.     All of the Debtor'(s) assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor(s) pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and

as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order. If this case is later converted to a case under chapter 7 of the Bankruptcy Code, all assets of the debtor shall revest in the chapter 7 estate and be subject to administration by a chapter 7 trustee.

22.     The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

23.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

24.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor

may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

25.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

26.     As soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in Section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in 11 U.S.C. § 523(a).

27.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

28.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

29.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors.

If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

30.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

31.     This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed: February 04, 2026

Jeffrey P. Norman
United States Bankruptcy Judge

Approved as to form by:

PENDERGRAFT & SIMON, LLP

/s/ *William P. Haddock*
William P. Haddock
  Texas Bar No. 00793875
  S.D. Tex. Adm. No. 19637
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Debtor*

KEVIN M. EPSTEIN
UNITED STATES TRUSTEE REGION 7
SOUTHERN AND WESTERN DISTRICTS
OF TEXAS

/s/ *C. Ross Travis* *with permission by WPH
Jana Smith Whitworth
SBOT No. 00797453/Fed. ID 20656
Christopher Ross Travis
La. Bar. No. 40083 /Fed. ID 3725298
515 Rusk Ave., Suite 3516
Houston, TX 77002
Tel. (713) 718-4650

*Counsel for the United States Trustee*

ADAMS & REESE, LLP

/s/ *Emory C. Powers* *with permission by WPH
Emory C. Powers
Texas Bar No. 24131597
emory.powers@arlaw.com
1221 McKinney St., Suite 4400
Houston, TX 77010
Tel. (713) 652-5151
Fax. (713) 652-5152

*Counsel for Wells Fargo Bank, N.A.*

HOWLEY LAW PLLC

/s/ *Tom Howley* *with permission by WPH
Tom Howley
Texas Bar No. 24010115
700 Louisiana, Suite 4220
Houston, TX 77002
Tel. (713) 333-9120

*Subchapter V Trustee*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re** | § | |
| | § | |
| **SEQUOIA GROVE, INC.,** | § | **No. 25-35441** |
| | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |

---

**SECOND AMENDED PLAN OF REORGANIZATION
FOR SMALL BUSINESS UNDER SUBCHAPTER V, CHAPTER 11**
Dated February 3, 2026

---

**Table of Contents**

I. Background for Case Filed Under Subchapter V ................................................................ 4

    A. Description and History of the Debtor's Business ............................................ 4

    B. Liquidation Analysis ....................................................................................... 4

    C. Ability to make future plan payments and operate without further reorganization .......... 5

II. Summary ........................................................................................................................ 6

III. Definitions .................................................................................................................... 7

IV. Treatment of Administrative Expense Claims, Priority Claims, and Quarterly and Court Fees ................................................................................................................. 9

    A. Unclassified claims ......................................................................................... 9

    B. Administrative expense claims ....................................................................... 9

    C. Priority tax claims .......................................................................................... 10

        1. Property Taxes ....................................................................................... 10

        2. Sales and/or Franchise Taxes ................................................................ 11

        3. Federal Income Taxes ........................................................................... 11

        4. Federal Unemployment Taxes ............................................................... 12

    D. Statutory fees ................................................................................................. 12

V. Treatment of Claims and Interests Under the Plan ........................................................ 12

    A. Class 1 – Secured claim of Wells Fargo Bank, N.A. ...................................... 12

    B. Class 2 – Secured claim of Bank of America ................................................. 14

Exhibit A

C.   Class 3 – Secured claim of AmeriCredit Financial Services (acct. x0408) ......................14

D.   Class 4 – Secured claim of AmeriCredit Financial Services (acct. x8447) ......................15

E.   Class 5 – Secured claim of TD Auto Finance ................................................16

F.   Class 6 – Priority Claims...................................................................16

G.   Class 7 – General Unsecured Claims ........................................................17

H.   Class 8 – Equity Interests of the Debtor ....................................................17

VI. Allowance and Disallowance of Claims .........................................................18

A.   Disputed claim.............................................................................18

B.   Objections to claims.......................................................................18

C.   Delay of distributions on a disputed claim ..................................................18

D.   Anticipated claims objections .............................................................18

E.   Settlement of disputed claims..............................................................18

VII. Provisions for Executory Contracts and Unexpired Leases ......................................18

A.   Assumed executory contracts and unexpired leases..........................................18

B.   Rejected executory contracts and unexpired leases..........................................20

VIII. Post-Confirmation Management ..............................................................20

IX. Means for Implementation of the Plan..........................................................20

A.   Sale of Property ...........................................................................20

B.   Distributions of Disposable Income.........................................................21

C.   Distributions by Debtor under a consensual Plan ...........................................21

D.   Distributions by Subchapter V Trustee under a nonconsensual Plan ..........................21

E.   Default under the Plan ....................................................................22

F.   Event of Uncured Default..................................................................22

X. Effect of Confirmation .......................................................................22

A.   Binding Effect of Confirmation............................................................22

B.   Injunction ................................................................................23

C.   Injunctions related to Debtor's members ...................................................23

D.   Exculpation and Limitation of Liability ....................................................23

E.   Vesting of Assets..........................................................................23

XI. Discharge ..................................................................................24

XII. Other Provisions ................................................................................................... 24

    A.  Employment of professionals after the Effective Date .................................................. 24

    B.  Final Decree ................................................................................................................. 24

    C.  Reservations of right to amend Plan ........................................................................... 25

    D.  Alternative plans of reorganization ............................................................................. 25

    E.  Severability .................................................................................................................. 25

    F.  Headings ...................................................................................................................... 25

    G.  Controlling effect ......................................................................................................... 25

    H.  Retention of jurisdiction .............................................................................................. 25

## I.
## Background for Case Filed Under Subchapter V

### A.   Description and History of the Debtor's Business

The Debtor is a corporation formed and organized under the laws of the State of Texas. The Debtor was formed on April 14, 2022 by Martin Rafter, who has been the sole shareholder and Director of the Corporation at all times. The Corporation was formed for the acquisition of the business and assets of GM Outdoor Living, Pool & Spa Inc., which had been engaged in the business of designing and constructing residential swimming pools in Northeast Harris County for 23 years. Besides purchasing the trade name of the business, the Corporation also acquired real property at 1207 West Ferguson Street, Humble, TX 77338, which had served as GM Outdoor Living, Pool & Spa Inc.'s place of business, two vehicles, one concrete pump, and assorted office furniture and hand tools.

Financing for this acquisition was through a loan by Wells Fargo Bank, N.A., which was backed by the U.S. Small Business Administration.

The Debtor quickly diversified its business by providing swimming pool maintenance and cleaning services as well as providing design and construction for patios and outdoor kitchens. The maintenance and cleaning part of the business only produces 15 percent of the Debtor's revenues; however, it is stable income.

The Debtor further diversified its business by starting the construction of patios and outdoor kitchens, either as part of a swimming pool construction project or as stand-alone project.

During 2023, interest rates started rising, which had a significant negative impact on the Debtor's revenues from design and construction. In 2022 and 2023, nearly 85 percent of Debtor's construction revenues came from customers who used financing to pay for their projects. In 2022 through June 2023 interest rates for home improvement loans could be obtained between 4–4.75 percent. In July 2023 interest rates spiked above 12 percent for the same loans. Due to the elevated interest rates, in 2025 year to date construction revenue from customers who used financing to pay for their projects has dropped to 30 percent of total revenue. The significant impact of elevated interest rates has caused Debtor's revenue to decrease from $4.1 million in 2023, to $2.4 million in 2024, to a projected full year 2022 revenue of $2.2 million. This is a 46 percent reduction in revenue.

While interest rates are predicted to decline during 2025, the Debtor believes that interest rates will not decline to the favoraable rates that existed prior to June 2023.

### B.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Ex-hibit A.

In a hypothetical liquidation of the bankruptcy estate of the Debtor, the liquidation value of the assets is insufficient to pay any general unsecured claims of the Debtor. Moreover, the Debtor's assets are currently insufficient to pay holders of secured claims—particularly Wells Fargo Bank, which holds a lien on all of the Debtor's assets—the full value of their claims.

Accordingly, the Debtor asserts that the reorganization of its bankruptcy estate which is proposed in this Plan will maximize the recovery that its general unsecured creditors and those creditors with secured claims that are undersecured; therefore, liquidation under Chapter 7 would not be in the best interest of the creditors.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

### C.   Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan Proponent has provided projected financial information as EXHIBIT B.

The Plan Proponent's financial projections show that the Debtor will have projected Disposable Income (as defined by § 1191(d) of the Bankruptcy Code) for the 36-month period described in § 1191(c)(2) of $292,928.18.

The final Plan payment is expected to be paid in month 36, which is projected to be December 2029.

The Debtor asserts there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan. As the U.S. District Court has pointed out, determining feasibility "is peculiarly fact intensive and requires a case by case analysis, using as a backdrop the relatively low parameters articulated in the statute. . . . A relatively low threshold of proof will satisfy the feasibility requirement." *In re Quintela Group, LLC*, No. 4:20-CV-3499, 2021 WL 4295247, *4 (S.D. Tex. Sep. 20, 2021) (quoting *In re Star Ambulance Service, LLC*, 540 B.R. 251, 266 (Bankr. S.D. Tex. 2015)).

Accordingly, based upon these projections the Debtor asserts that the reorganization of its bankruptcy estate which is proposed in this Plan does not discriminate unfairly between the classes of creditors and interest holders herein, and is fair and equitable to each class of creditors. Therefore, the Debtor urges creditors to vote in favor of this Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## II.
## Summary

This Plan of Reorganization (the *Plan*) under chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of Sequoia Grove, Inc. (the *Debtor*) from the sale of the Debtor's real property and paying its future Disposable Income to its creditors over a term of four years.

This Plan provides for five classes of claims, described in the table below:

| | |
|---|---|
| **Class 1** | The claim of Wells Fargo Bank, N.A., to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 2** | The claim of Bank of America, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 3** | The claim of GM Financial (acct x0408), to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 4** | The claim of GM Financial (acct x8447), to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 5** | The claim of TD Auto Finance, to the extent allowed as a secured claim under 11 U.S.C. § 506. |
| **Class 6** | All Allowed Claims entitled to priority under 11 U.S.C. § 507(a) (except administrative expense claims under 11 U.S.C. § 507(a)(2) and priority tax claims under 11 U.S.C. § 507(a)(8). <br><br> This is an empty class; Debtor does not anticipate any Allowed Claims in this class but is keeping it available for such Allowed Claims out of an abundance of caution. |
| **Class 7** | All non-priority unsecured claims allowed under 11 U.S.C. § 502. |
| **Class 8** | Equity interests of the Debtor. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at a *di minimis* amount. This Plan also provides for the payment of administrative claims and priority claims, to the extent such claims are entitled to priority.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## III.
## Definitions

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions.

"*Administrative Claim*" or "*Administrative Priority Claim*" means a Claim that is entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b)(1)–503(b)(9), 506(c), or 1103 asserted in this case, which Claims are described in Section VI of this Disclosure Statement and treated in Section VI of this Disclosure Statement and Plan.

"*Administrative Claim Bar Date*" means the date set by the Court by which administrative claims entitled to priority under 11 U.S.C. §§ 326, 327, 330, 503(b), 506(c), or 1103 asserted in these cases, including substantial contribution claims, must be filed. Debtor will request that the Court set the Administrative Claim Bar Date by separate order of the Court.

"*Allowed Claim*" means a Claim or any portion thereof:

1. that has been allowed by a Final Order,

2. that either has been Scheduled as a liquidated, non-contingent, undisputed Claim in an amount greater than zero in the Debtor's Schedules, as the same may from time to time be amended in accordance with the Bankruptcy Code, Bankruptcy Rules or order of the Bankruptcy Court, or is the subject of a timely filed proof of Claim as to which either no objection to its allowance has been filed (either by way of objection or amendment to the Schedules) within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court, or any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, or

3. that is expressly allowed in a liquidated amount in the Plan; provided, however that with respect to an administrative claim.

"*Allowed Claim*" further means an administrative claim as to which a timely request for payment has been made in accordance with this Plan—if such written request is required—or other administrative claim, in each case as to which:

1. a timely objection has not been filed, or

2. a timely objection is filed, and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

"*Claim*" means a claim against any of the Debtor's Bankruptcy Estate, whether or not asserted, as defined in 11 U.S.C. § 101(5).

"*Claims Bar Date*" means the last date holders of non-administrative claims that are not governmental units may file claims against the Debtor's Bankruptcy Estate—December 2, 2024.

"*Confirmation*" means entry by the Bankruptcy Court of the Confirmation Order confirming this Plan.

"*Confirmation Date*" means the date of entry by the Bankruptcy Court of the Confirmation Order.

"*Confirmation Order*" means the order entered by the Bankruptcy Court confirming the Plan.

"*Disposable Income*" means the income that is received by the debtor and that is not reasonably necessary to be expended: (1) for the maintenance or support of the debtor or a dependent of the debtor or a domestic support obligation that first becomes payable after the Petition Date; or (2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

"*Effective Date*" shall occur at the later of: (a) the 15th day following the Confirmation Date, or (b) the date of the closing of the sale of Debtor's physical assets to the Shah Group, or the prevailing bidders at an auction.

"*Final Order*" means an order or judgment of the Bankruptcy Court, as entered on the docket in the Debtor's Bankruptcy Case, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

"*Government Claims Bar Date*" means the last date holders of non-administrative claims that are governmental units may file claims against the Debtor's Bankruptcy Estate—March 13, 2025.

"*Impaired*" means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of 11 U.S.C. § 1124.

"*Plan*" means this Plan of Reorganization, as it may be further amended or supplemented.

"*Priority Claim*" means a Claim asserted under 11 U.S.C. §§ 507(a)(3)–507(a)(10) against the Debtor's Bankruptcy Estate.

"*Secured Claim*" means a Claim, other than a setoff claim, that is secured by an encumbrance, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the effective date or such later date as is established by the Bankruptcy Court, of such interest or encumbrance as determined by a Final Order of the Bankruptcy Court pursuant to 11 U.S.C. § 506 or as otherwise agreed upon in writing by Debtor and the holder of such Claim.

"*Subchapter V Trustee*" means Thomas A. Howley, who was appointed by the U.S. Trustee to serve as the Subchapter V Trustee and carry out those duties specified in 11 U.S.C. § 1183.

"*Substantial Consummation*" means: (a) transfer of all or substantially all of the property proposed by the Plan to be transferred; (b) assumption by the debtor or by the successor to the debtor under the Plan of the business or of the management of all or substantially all of the property dealt with by the Plan; and (c) commencement of distributions under the Plan.

"*Unimpaired Claim*" means a claim that is not an impaired claim.

"*Unsecured Claim*" shall mean a claim that is not entitled to priority under 11 U.S.C. §§ 507(a)(1)–507(a)(9) and includes deficiency claims of any of the secured creditors.

**IV.**
**Treatment of Administrative Expense Claims, Priority Claims, and**
**Quarterly and Court Fees**

### A.   Unclassified claims

Under 11 U.S.C. § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

### B.   Administrative expense claims

Subject to Court approval of a fee application(s), each holder of an administrative expense claim allowed under 11 U.S.C. § 503, will be paid in full on the Effective Date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Debtor anticipates there will be two administrative expense claims made by: (1) Pendergraft & Simon, LLP, counsel for the Debtor-in-Possession, and (2) Thomas A. Howley, the Subchapter V Trustee. All claims for administrative expenses will require the submission of a fee application and approval of the said fee application by the Bankruptcy Court before any claim can be paid.

The Debtor anticipates that administrative claims will be as follows:

| Claimant | Amount |
|---|---|
| Pendergraft & Simon, LLP | $48,000.00[1] |
| Thomas A. Howley | 8,000.00[2] |
| Total | $56,000.00 |

---

[1] Listed amount includes a $40,000 retainer paid prior to the Petition Date.

[2] Listed amount includes monthly payments of interim fees, totaling $3,000.00, pursuant to the Order to Debtor-in-Possession in a Small Business Case (ECF no. 5).

In the event any administrative fee has not been approved by the Court by the Effective Date, the Debtor will hold such amount in reserve until approval.

## C.   Priority tax claims

Upon information and belief, the Debtor owes no taxes to any taxing authority. In the event a taxing authority files a proof of claim prior to the Government Claims Bar Date, the Debtor will pay such claims as follows:

## 1.   Property Taxes

As shown in the table below, certain local taxing authorities (collectively the "Ad Valorem Taxing Authorities") filed proofs of claims for estimated taxes due as of the Petition Date for the 2025 tax year:

| | Claim per Schedules | | Proof of Claim | | | |
|---|---|---|---|---|---|---|
| Creditor | Amount | CUD | Amount | Date Filed | Objection | Position on Allowance |
| City of Houston | | | $931.68 | 9/22/25 | | $931.68 |
| City of Humble | | | 465.62 | 12/17/25 | | 465.62 |
| Harris County | unknown | | | | | |
| Houston City College | | | 172.60 | 9/22/25 | | 172.60 |
| Houston ISD | | | 1,558.16 | 9/22/25 | | 1,558.16 |
| Humble ISD | | | 1,827.18 | 10/14/25 | | 1,827.18 |
| Lone Star College System | | | 191.18 | 12/17/25 | | 191.18 |
| **Total** | | | | | | **$4,955.24** |

Property taxes for the 2025 tax year are not currently due and will not be considered delinquent until February 1, 2026. *See* Tex. Tax Code. § 31.02.

The Priority Tax Claims for property taxes arising under the Texas Tax Code (collectively the "Ad Valorem Taxing Authorities") are also secured claims under 11 U.S.C. § 506(b) and are secured by a first-in-priority, statutory lien on all the Debtor's assets pursuant to Tex. Tax Code § 32.01. All statutory liens of the Ad Valorem Taxing Authorities shall be preserved with the same lien priority as afforded under applicable non-bankruptcy law.

Notwithstanding anything to the contrary contained within the Confirmed Plan, property taxes due at the Effective Date to any Ad Valorem Taxing Authority shall be paid by the Reorganized Debtor on the Effective Date of the Plan. Any property taxes for years 2023 and prior shall bear interest at the statutory rate of 12 percent per annum accruing from the Petition Date until said taxes are paid in full. The property taxes for the 2025 tax year shall bear interest at the statutory rate of 12 percent per annum beginning February 1, 2026, until said taxes are paid in full. Any, and all, statutory tax liens securing prepetition and post-petition taxes shall be retained until such taxes are paid in full.

Any post-petition property taxes owed to any ad valorem taxing authority over real and personal property of the Estates shall be paid in the ordinary course of business and prior to delinquency under Texas law, and the ad valorem taxing authorities shall not be required to file an Administrative Expense Claim or request for allowance and payment of their claim. In the event any post-petition property taxes are not paid prior to delinquency under Texas law, penalties and interest shall accrue as provided under Texas law and the ad valorem taxing authorities shall be authorized to commence any, and all, collection activities in state court without further order of this Court.

Default shall occur if either:

1.  The Allowed Claims of the ad valorem taxing authorities are not paid in accordance with the schedule set forth above, or

2.  If the Debtors fail to pay any post-petition taxes prior to the statutory delinquency date under the Texas Tax Code.

In the event of default, the affected ad valorem taxing authority shall send written notice of default to the defaulting Debtor(s) and its attorney. If the default is not cured within 21 days after notice of the default is mailed, the affected ad valorem taxing authority may proceed with state law remedies for collection of all amounts due under state law pursuant to the Texas Tax Code.

## 2.   Sales and/or Franchise Taxes

The Debtor is responsible for payment of sales taxes and franchise taxes. The Debtor is current on all such tax payments; however, to the extent the Comptroller of Public Accounts has an Allowed Claim for unpaid franchise taxes or sales taxes, any Allowed Claim will be paid at the Effective Date of the Plan, inclusive of all statutory penalties and interest allowed under the Texas Tax Code.

## 3.   Federal Income Taxes

The Debtor reports its income taxes on IRS Form 1120 and is responsible for payment of its federal income taxes.

On December 11, 2025, the IRS filed an Amended Proof Claim estimating its income taxes for the year ending December 31, 2025 will be $265.00. This amount is subject to change and will be ultimately assessed by the IRS after the Debtor files its return for the 2025 tax year.[3]

The Debtor is current on its payments all federal income taxes; however, to the extent the IRS has an Allowed Claim for unpaid income taxes any Allowed Claim will be paid at the Effective Date of the Plan, inclusive of all statutory penalties and interest allowed under the Internal Revenue Code. To the extent additional taxes are assessed by the IRS after the filing of the 2025 tax return, such additional taxes will be paid within 14 days after the assessment.

---

[3] Absent an extension, the tax return is due by April 15, 2026. *See* 26 U.S.C. § 6072.

All income taxes due to the IRS will be treated as a priority claim in accordance with 11 U.S.C. § 507(a)(8).

### 4.  Federal Unemployment Taxes

The Amended Proof of Claim filed by the IRS identified Federal Unemployment Taxes (reported on Form 940) for the tax years ended 2023 and 2024 in the amount of $868.17, plus pre-petition interest of $82.16. The underlying tax returns were not timely filed, but the Debtor will have filed these tax returns by the anticipated Confirmation Date.

This claim will be paid at the Effective Date of the Plan, inclusive of all statutory penalties and interest allowed under the Internal Revenue Code. To the extent additional taxes are assessed by the IRS after the filing of the underlying tax returns, such additional taxes will be paid within 14 days after the assessment.

All unemployment taxes due to the IRS will be treated as a priority claim in accordance with 11 U.S.C. § 507(a)(8).

### D.  Statutory fees

Under Subchapter V, there are no statutory fees required to be paid under 28 U.S.C. § 1930.

**V.**
**Treatment of Claims and Interests Under the Plan**

Claims and interests shall be treated as follows under this Plan:

### A.  Class 1 – Secured claim of Wells Fargo Bank, N.A.

**Description**. Class 1 consists of a two, secured claims held by Wells Fargo Bank, N.A. ("*Wells Fargo*"). As of the Petition Date, Wells Fargo holds two debts based on promissory notes. The first is a promissory note in the original principal amount of $1,620,500.00 that matures December 9, 2034. As of the Petition Date, the amount due, including pre-petition delinquencies, was $1,562,243.07.

The second is a promissory note in the original principal amount of $50,000.00 and matured on November 4, 2025. As of the Petition Date, the amount due, including pre-petition delinquencies, was $52,315.62.

Both promissory notes are cross-collateralized and secured by duly perfected liens on:

- Debtor's real property at 1207 W. Ferguson, Humble, Texas 77338;

- Motor vehicles not otherwise listed as collateral for debts in Classes 2 through 5, below; and

- All cash collateral, receivables, inventory, equipment, chattel pater, and general intangibles.

**Treatment**.  At the Effective Date, Wells Fargo will have an Allowed Claim of $1,604,558.69, *plus* all interest that has accrued since the Petition Date, *less* those adequate protections payments received by it between the Petition Date and the Confirmation Date. Debtor estimates that the total Allowed Claim as of the Effective Date will be approximately, $1,631,034.56.

This claim is secured by collateral on all of the property of the estate, subject only to senior liens, such a property tax liens or other motor vehicle liens securing debts in Classes 2 through 5. The value of Wells Fargo's collateral is estimated to be $344,848.23, leaving the remaining claim as a general, unsecured claim.

The Allowed Claim of Wells Fargo Bank will be paid in three ways. ***Firstly***, it will be paid the net sales proceeds, after deducting a standard broker's commission and closing costs, from the sale of the Debtor's real property at 1207 W. Ferguson, Humble, Texas 77338. The manner of conducting this sale is set forth in Section IX(A), on page 20.

***Secondly***, Wells Fargo Bank shall receive a monthly payment of $4,204.12 beginning on the first month following the Effective Date and continuing for 36 months.

In the event the net sales proceeds from the sale of the Real Property that is paid to Wells Fargo Bank is less than $193,500.00, the Reorganized Debtor shall continue to make monthly installment payments following the 36th month in an amount not less than $4,204.12 until the total monthly payments paid to Wells Fargo Bank equal $344,848.23.

***Lastly***, the remainder of Wells Fargo Bank's Allowed Claim shall receive be treated as a general unsecured claim that is treated in Class 7.

Wells Fargo will retain all of its liens in all property described in its Deed of Trust and UCC Financing Statement(s) until the final payments due to Wells Fargo Bank, in month 36 are made. As part of the Court's retention of jurisdiction in Section XII(H), the Court retains jurisdiction to adjudicate any dispute as to amounts required to be paid to Wells Fargo Bank and/or the release of any lien.

Upon the Confirmation Date, the automatic stay under 11 U.S.C. § 362(a) shall be modified to allow the creditor to: (a) send account statements to the Reorganized Debtor to advise it of its payment history and amounts due, and (b) provide loan payoff amounts to the Reorganized Debtor. Wells Fargo Bank shall designate the address where all payments required by this Plan shall be mailed or delivered.

**Impairment**.  Impaired.

### B.   Class 2 – Secured claim of Bank of America

**Description**.  Class 2 consists of a single, secured claim of Bank of America that Debtor scheduled in the amount of $19,408.00, secured by a validly perfected motor vehicle lien on a 2022 Chevrolet Colorado (VIN 1GCGSBEA8N1275932), which Debtor estimated to be worth $18,000 at the Petition Date. This claim is based upon a Motor Vehicle Retail Installment Sales Contract, dated September 21, 2022, which provides for 72 monthly payments of $552.70 commencing on October 25, 2022. Interest included in the monthly payments is 6.39% per annum.

On September 30, 2025, Bank of America filed a Proof of Claim, stating the amount due as of the Petition Date was $18,572.00 and claiming the value of the collateral was $18,572.00.

**Treatment**.  Bank of America shall have an allowed, secured claim in the amount of $18,572.00. This claim will be paid by the Debtor in accordance with the pre-petition contract between the Debtor and Bank of America.

Bank of America shall retain its lien until the final payment under the pre-petition contract between the Debtor and Bank of America is fully performed by the Debtor. Upon the receipt of the final payment due by the Debtor, Bank of America shall release the motor vehicle lien in accordance with the pre-petition contract and applicable nonbankruptcy law.

Upon the Confirmation Date, the automatic stay under 11 U.S.C. § 362(a) shall be modified to allow the creditor to: (a) send account statements to the Reorganized Debtor to advise it of its payment history and amounts due, and (b) provide loan payoff amounts to the Reorganized Debtor. Further, following the Confirmation Date, the creditor shall allow the Reorganized Debtor to pay installment payments electronically, by ACH or EFT, or enroll in other electronic payment programs.

**Impairment**.  Unimpaired.

### C.   Class 3 – Secured claim of AmeriCredit Financial Services (acct. x0408)

**Description.**  Class 3 consists of a single, secured claim of AmeriCredit Financial Services, Inc. d/b/a GM Financial ("AmeriCredit") that Debtor scheduled in the amount of $20,491.00, secured by a validly perfected motor vehicle lien on a 2022 Chevrolet Colorado (VIN 1GCGSBEN9N1331086), which Debtor estimated to be worth $18,000 at the Petition Date. This claim is based upon a Retail Installment Sales Contract, dated March 29, 2023, which provides for 72 monthly payments of $528.53 commencing on May 13, 2023. Interest included in the monthly payments is 7.99% per annum.

On September 30, 2025, AmeriCredit filed a Proof of Claim, stating the amount due as of the Petition Date was $19,722.65 and claiming the value of the collateral was $19,772.65.

At the Petition Date, there was no monetary default, and the Debtor originally proposed a plan that would continue to pay AmeriCredit pursuant to the terms of its pre-petition contract.

On December 22, 2025, the motor vehicle securing this Allowed Claim was involved in a collision and was declared a total loss by the Debtor's insurance carrier, which is seeking to pay $18,643.16 for the loss of the vehicle. On January 12, 2026, AmeriCredit filed a Motion for Approval of an Agreement Pursuant to Bankruptcy Rule 4001(D), seeking approval of an agreed order that will grant AmeriCredit relief from the automatic stay as to the vehicle and its insurance proceeds (ECF nos. 67, 68).

Based upon the settlement, AmeriCredit has acknowledged that the account has been paid in full and that the Debtor will be receiving a $92.29 refund.

**Treatment.**  AmeriCredit shall be entitled to the insurance proceeds of $18,643.16 in partial satisfaction of its Allowed Claim. Once AmerCredit receives the insurance proceeds, the account will be deemed to be paid in full.

Pursuant to the terms of the underlying insurance policy, the Debtor and AmeriCredit shall relinquish and assign all claims to the title of the vehicle to the insurance carrier. AmeriCredit shall have a substitute lien on all insurance proceeds from the loss of the motor vehicle until the proceeds are paid in full by the insurance carrier.

**Impairment.**  Unimpaired.

### D.   Class 4 – Secured claim of AmeriCredit Financial Services (acct. x8447)

**Description**.  Class 4 consists of a single, secured claim of AmeriCredit Financial Services, Inc. d/b/a GM Financial ("AmeriCredit") that Debtor scheduled in the amount of $20,980, secured by a validly-perfected motor vehicle lien on a 2022 Chevrolet Silvarado (VIN 3GCPABEKXNG636073), which Debtor estimated to be worth $23,250.00 at the Petition Date. This claim is based upon a Retail Installment Sales Contract, dated September 7, 2022, which provides for 72 monthly payments of $740.91 commencing on October 22, 2022. Interest included in the monthly payments is 7.09% per annum.

On September 26, 2025, AmeriCredit filed a Proof of Claim, stating the amount due as of the Petition Date was $24,493.40 and claiming the value of the collateral was $24,493.40.

**Treatment**.  AmeriCredit shall have an allowed, secured claim in the amount of $24,493.40. This claim will be paid by the Debtor in accordance with the pre-petition contract between the Debtor and AmeriCredit.

AmeriCredit shall retain its lien until the final payment under the pre-petition contract between the Debtor and AmeriCredit is fully performed by the Debtor. Upon the receipt of the final payment due by the Debtor, AmeriCredit shall release the motor vehicle lien in accordance with the pre-petition contract and applicable nonbankruptcy law.

Upon the Confirmation Date, the automatic stay under 11 U.S.C. § 362(a) will be modified to allow the creditor to: (a) send account statements to the Reorganized Debtor to advise it of its payment history and amounts due, and (b) provide loan payoff amounts to the Reorganized Debtor. Further,

following the Confirmation Date, the creditor shall allow the Reorganized Debtor to pay installment payments electronically, by ACH or EFT, or enroll in other electronic payment programs.

**Impairment**.  Unimpaired.

### E.   Class 5 – Secured claim of TD Auto Finance

**Description**.  Class 5 consists of a single, secured claim of TD Bank, successor in interest to TD Auto Finance, LLC. that Debtor scheduled in the amount of $24,745.96, secured by a validly-perfected motor vehicle lien on a 2022 Chevrolet Silverado (VIN 3GCPABEK1NG639766), which Debtor estimated to be worth $23,250.00 at the Petition Date. This claim is based upon a Motor Vehicle Retail Installment Sales Contract, dated September 9, 2022, which provides for 72 monthly payments of $738.01 commencing on October 24, 2022. Interest included in the monthly payments is 6.59% per annum.

On September 19, 2025, TD Bank filed a Proof of Claim, stating the amount due as of the Petition Date was $24,745.96; however, it did not state any other opinion as to the value of the collateral.

**Treatment**.  AmeriCredit shall have an allowed, secured claim in the amount of $24,745.96. This claim will be paid by the Debtor in accordance with the pre-petition contract between the Debtor and TD Bank.

TD Bank shall retain its lien until the final payment under the pre-petition contract between the Debtor and TD Bank is fully performed by the Debtor. Upon the receipt of the final payment due by the Debtor, TD Bank shall release the motor vehicle lien in accordance with the pre-petition contract and applicable nonbankruptcy law.

Upon the Confirmation Date, the automatic stay under 11 U.S.C. § 362(a) will be modified to allow the creditor to: (a) send account statements to the Reorganized Debtor to advise it of its payment history and amounts due, and (b) provide loan payoff amounts to the Reorganized Debtor. Further, following the Confirmation Date, the creditor shall allow the Reorganized Debtor to pay installment payments electronically, by ACH or EFT, or enroll in other electronic payment programs.

**Impairment**.  Unimpaired.

### F.   Class 6 – Priority Claims

**Description**.  Class 6 is an empty class. With the exception of administrative priority claims and certain unclassified claims described in Section V(C), above, Debtor has no creditors with claims that would be entitled to priority under 11 U.S.C. § 507.

**Treatment**.  If a claim is ultimately allowed in this class, holders of such claims will be paid in full, in deferred cash payments, from the Debtor's future Disposable Income commencing after all Administrative claims and Priority Tax Claims have been paid in full.

**Impairment**.  n/a.

## G.  Class 7 – General Unsecured Claims

**Description**.  Class 7 consists of the general, unsecured claims listed in the table below:

| | Claim per Schedules | | Proof of Claim | | | |
|---|---|---|---|---|---|---|
| Creditor | Amount | CUD | Amount | Date Filed | Objection | Position on Allowance |
| American Express | $100,000.00 | | | | | $100,000.00 |
| Continental Casualty Co.[4] | | | $12,964.06 | 10/27/25 | | 12,964.06 |
| **Total** | | | | | | **$406,768.47** |

Claims in Class 7 also include those portions of tax claims, described in Section III(C), above, that are not secured or otherwise entitled to priority under 11 U.S.C. § 507(a)(8) and the unsecured portions of those claims in Classes 1 through 6, above.

**Treatment**.  Holders of claims in Class 7 shall receive a *pro rata* share of a quarterly payment of $3,075.16. These payments will be paid starting in Month 4 and continue through Month 36.

**Impairment**.  Impaired.

## H.  Class 8 – Equity Interests of the Debtor

**Description**.  Class 8 consists of the holder of the common stock of the Debtor, Martin Rafter.

**Treatment**.  As a result of confirmation of this Plan, Mr. Rafter will retain his common stock in the Debtor but will not be entitled to any distribution of dividends. Until the occurrence of both: (1) the distribution of all amounts due to holders of allowed claims in Classes 1 through 7 and (2) the Debtor receiving a discharge under 11 U.S.C. § 1192, the shareholder(s) in Class 8 will not be entitled to receive any payment from the Debtor except for salary[5] or reimbursement for post-confirmation purchases of inventory or supplies purchased with funds or credit advanced by Mr. Rafter.

**Impairment**.  Impaired.

---

[4] Claim is for unpaid premiums as of the petition date. These premiums are paid on a monthly basis as part of the Debtor's regular business operations.

[5] *See* Section VIII, on page 21.

## VI.
## Allowance and Disallowance of Claims

### A.   Disputed claim

A *disputed claim* is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either:

1. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

2. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

### B.   Objections to claims

Claims objections must be made by:

1. For a proof of claim filed prior to the Effective Date, not later than 30 days after the Effective Date; or

2. For a proof of claim filed after the Effective Date but before the Bar Date, not later than 30 days after the date the proof of claim is filed.

### C.   Delay of distributions on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

### D.   Anticipated claims objections

The Debtor does not anticipate the need to object to any claims on file as of the filing date of this Plan. Nonetheless, the Debtor reserves the right to object to any claims made, especially those claims made after the filing of this Plan.

### E.   Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## VII.
## Provisions for Executory Contracts and Unexpired Leases

### A.   Assumed executory contracts and unexpired leases

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

| Contracting Party | Date Signed | Project Type | Contract Amount | Remaining at Petition Date |
|---|---|---|---|---|
| Manuel Duarte, Jr.<br>8423 Hunterwyck Ln.<br>Baytown, TX 77521 | 7/3/2025 | Patio | $38,581.00 | $16,290.50 |
| Shawn Henderson<br>1006 Golden Bear Ln.<br>Kingwood, TX 77339 | 7/16/2025 | Swimming pool | 87,364.00 | 44,555.64 |
| Bradley Brian<br>17714 Lake Malone Ct.<br>Atascocita, TX 77346 | 8/18/2025 | Patio & fireplace | 60,283.00 | 39,188.67 |
| Matthew Venable<br>9302 Providence Bend Ln.<br>Kingwood, TX 77365 | 8/29/2025 | Swimming pool | 90,495.00 | 87,495.00 |
| Matthew Venable<br>9302 Providence Bend Ln.<br>Kingwood, TX 77365 | 8/29/2025 | Patio | 63,267.00 | 57,267.00 |

As of the date of the filing of this Plan, all of the above-described contracts that were executory on the Petition Date have been fully performed.

Following the Petition Date, the Debtor entered the following contracts in the ordinary course of its business:

| Contracting Party | Date Signed | Project Type | Contract Amount |
|---|---|---|---|
| Austin Lasprilla<br>14810 Bonhamford Ct.<br>Humble, TX 77396 | 9/27/2025 | Swimming pool & patio | $85,240.00 |
| Billy Green<br>22836 Winward Meadow<br>Porter, TX 77365 | 10/8/2025 | Patio, fireplace & outdoor kitchen | 77,904.00 |
| Steven Fipke<br>7906 Pine Heath Ct.<br>Humble, TX 77396 | 10/13/2025 | Swimming pool | 83,580.00 |
| | | | |

While the above-described Post Petition contracts are not executory contracts under 11 U.S.C. § 365,[6] it is the Debtor's intent to fully perform these contracts in furtherance of its reorganization.

---

[6] *See In re Lesle Fay Co., Inc.*, 168 B.R. 294, 300 (Bankr. S.D.N.Y. 1994).

## B.   Rejected executory contracts and unexpired leases

The Plan constitutes a motion to reject all other executory contracts and unexpired leases to which the Debtor is a party.

If the rejection by the Debtor pursuant to the Plan or otherwise of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely proof of Claim or a proof of Claim that is deemed to be filed timely under applicable law, then such Claim will be forever barred and unenforceable against the Debtor's Bankruptcy Estate, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Debtor within thirty (30) days after entry the Confirmation Order.

**VIII.**
**Post-Confirmation Management**

After the Confirmation Date, Martin Rafter will continue to serve as the sole Director and the President of the Reorganized Debtor. Until this Plan is fully performed, there shall be no changes in the management of the Reorganized Debtor except as may be allowed by the Bankruptcy Court in a modified plan of reorganization or after notice and hearing to all creditors whose Allowed Claims have not been fully paid.

Mr. Rafter shall be entitled to a salary of $5,000.00 per month plus health insurance benefits equivalent to those benefits existing as of the Petition Date. So long as the Reorganized Debtor may pay the projected disposable income reflected in EXHIBIT B, this salary may be increased up to a gross amount of $10,000.00 per month Following the Effective Date.

These limitations shall remain in effect so long as the Reorganized Debtor is making required payments under this Plan.

**IX.**
**Means for Implementation of the Plan**

## A.   Sale of Property

The Debtor has determined, in its business judgment, that the real property at 1207 West Ferguson Street, Humble, Texas 77336 is not needed for an effective reorganization. In that regard in consultation with Wells Fargo Bank, the Debtor shall employ Stelios Castillo of Atlantis Management Group, Broker LLC, to list and market the Real Property. This application will be made prior to confirmation of this Plan.

The compensation of the Broker will be limited to the industry-standard 6 percent commission.

Because the Real Property is part of the collateral securing the loan of Wells Fargo Bank,[7] it will receive all net sales proceeds after payment of all commissions and other closing costs. No contract for the sale of the Real Property shall be effective until it is also approved, in writing, by Wells Fargo Bank.

Prior to the sale of the Real Property, the Reorganized Debtor shall periodically provide progress reports as to offers received and provide updates to Wells Fargo Bank as to sales prospects.

The Debtor shall initially list the Real Property for sale at $215,000.00. Reductions in the list price shall be made in consultation with Wells Fargo Bank. In the event the Reorganized Debtor and Wells Fargo Bank disagree on a reduced listing price or the price of a proposed sale, the Court will retain jurisdiction to determine the adequacy of the proposed sale price.

Until the closing of any sale, the Reorganized Debtor shall retain the right to occupy the real property. The Reorganized Debtor will continue to maintain property insurance coverage for the real property and pay property taxes on the real property as such taxes come due.

If a sale of the Real Property cannot be closed within six (6) months following the Confirmation Date, Wells Fargo Bank may exercise its lien rights as to the Real Property in accordance with applicable non-bankruptcy law and without further notice to the Court.

### B. Distributions of Disposable Income

In addition to the sale of its real property, the Debtor will pay its future Disposable Income to the satisfaction of the Allowed Claims provided for in this Plan for a period 3 years following the Effective Date. As shown on EXHIBIT B, the Debtor projects that its Disposable Income for the 36 months following confirmation will be $282,928.18, and the Debtor commits to making this payment of Disposable Income during the term of this Plan.

### C. Distributions by Debtor under a consensual Plan

If the Plan is confirmed as a consensual plan, the services of the Subchapter V Trustee shall terminate upon the Effective Date, and all Plan payments of Allowed Claims shall be made by the Reorganized Debtor.

### D. Distributions by Subchapter V Trustee under a nonconsensual Plan

If the Plan is confirmed as a nonconsensual plan, the Subchapter V Trustee will make all Plan payments from the Debtor's Disposable Income for holders of all impaired Allowed Claims. in accordance with 11 U.S.C. § 1194(b). Payments to holders of Allowed Claims that are not impaired will continue to be made by the Reorganized Debtor as required by the existing prepetition contracts.

---

[7] *See* Section V(A), on page 13.

### E.    Default under the Plan

When a required payment to a Creditor under the Plan becomes delinquent, the Creditor may file a Notice of Default, identifying the payment(s) that are in default. Any default may be cured by: (a) providing full payment to the aggrieved Creditor within 14 days of the Notice of Default, (b) proposing a modified plan pursuant to 11 U.S.C. § 1193,[8] or (c) objecting to any Notice of Default within 7 days of the filing of the Notice of Default and obtaining a ruling from the Court declaring there was no default.

There shall be no than two (2) opportunities to cure a payment in default under subparagraph (a), above. Upon a third Notice of Default, the noticing Creditor shall automatically be granted relief from the stay, without further order of the Court, to exercise its rights in accordance with applicable non-bankruptcy law.

### F.    Event of Uncured Default

In the event of an uncured default that cannot be cured by the Debtor, through a modification of the Plan under § 1193, the Debtor agrees to: (1) convert the case to a liquidation under Chapter 7 or dismiss the case, or (2) not oppose a motion of the U.S. Trustee, the Subchapter V Trustee, or any creditor whose Allowed Claims have not been paid, convert the case to Chapter 7 or to dismiss the case.

In the event the case is converted to Chapter 7 liquidation, nothing in this Plan shall prevent a trustee from prosecuting any cause of action or pursuing any remedy for the recovery of property, available to trustees in the Bankruptcy Code, as to the Debtor or its creditors and insiders. However, no payment of an Allowed Claim to a creditor under the Confirmed Plan may be considered a preference under 11 U.S.C. § 547.

Debtor asserts that the treatment of defaults provided herein is fair and equitable to all creditors.

X.
**Effect of Confirmation**

### A.    Binding Effect of Confirmation

Upon confirmation and the occurrence of the Effective Date, the provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept the Plan. On or after the Effective Date, all holders of Claims shall be precluded and enjoined from asserting any Claim (a) against the Debtor based on any transaction or other activity of any kind that occurred prior to the Effective Date except as permitted under the Plan and (b) any derivative claims, including claims against

---

[8] If the Plan is confirmed as a consensual plan under 11 U.S.C. § 1191(a), the deadline to propose a modification to the Plan is the time of Substantial Consummation. If the Plan is confirmed as a nonconsensual plan under § 1191(b), the deadline to propose a modification to the Plan shall be 36 months following the Confirmation Date.

third parties asserting alter ego claims, fraudulent transfer claims or any other type of successor liability.

## B.   Injunction

Except as otherwise expressly provided in the Plan, all entities who have held, hold or may hold Claims against, or Interest in, the Debtor's Bankruptcy Estate or the Debtor shall be permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor or the Debtor's Bankruptcy Estate, (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or the Debtor's Bankruptcy Estate on account of any such Claim; provided, however, notwithstanding any provision of the Plan to the contrary, each holder of a Claim in Classes 1–7 shall be entitled to enforce its, her, or its rights under the Plan and Plan Documents.

## C.   Injunctions related to Debtor's members

The shareholders comprising the interest holders in Class 8 are prohibited from making any changes to the management of the Reorganized Debtor until all provisions of the Confirmed Plan have been satisfied.

## D.   Exculpation and Limitation of Liability

The Debtor will not have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, for any act or omission in connection with, relating to, or arising out of, the solicitation of votes to accept the Plan, any actions taken in the Debtor's Bankruptcy Case, or the pursuit of confirmation of the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan Documents, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

No holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, will have any right of action against the Debtor for any act or omission in connection with, relating to, or arising out of the solicitation of votes to accept the Plan, or the pursuit of confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, from the Petition Date to the Effective Date, except for their willful misconduct, gross negligence, actual fraud, or as provided by the Plan or the Plan

## E.   Vesting of Assets

To the extent not otherwise inconsistent with any other provision of this Plan, all property of the Estate shall vest with the Reorganized Debtor on the Effective Date of this Plan. However, if the

Reorganized Debtor defaults in performing under the provisions of the Plan and the chapter 11 case is converted to Chapter 7, all property vested in the Reorganized Debtor, all subsequently acquired property owned as of or after the conversion date, and all Retained Claims shall revest and constitute property of the Estate in the chapter 7 case.

## XI.
## Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

 (i) imposed by this Plan; or

 (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

 (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

 (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

The Debtor shall not be discharged from any debt imposed by the Plan. After the Effective Date of the Plan allowed claims against the Debtor arising pre-petition will be limited to the debts imposed by the Plan.

## XII.
## Other Provisions

### A. Employment of professionals after the Effective Date

Subject to the approval of the Court under the standards set forth in 11 U.S.C. § 327, the reorganized Debtor may employ professionals to assist it in effectuating the Confirmed Plan.

### B. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## C.   Reservations of right to amend Plan

The Debtor reserves the right to amend this Plan at any time prior to Confirmation in accordance with 11 U.S.C. § 1193(a). The Debtor reserves all rights to modify this Plan after Confirmation in accordance with 11 U.S.C. §§ 1193(b) and 1193(c).

## D.   Alternative plans of reorganization

The proposed Plan affords the holders of Claims the maximum potential for realization of the Debtor's assets and is in the best interest of the holders. If the Plan is not confirmed, theoretical alternatives include (i) continuation of the Chapter 11 case; (ii) alternative plans of reorganization; (iii) liquidation of the Debtor under Chapter 7; and (iv) dismissal of the Chapter 11 case.

If the Plan is not confirmed, other parties in interest could attempt to propose a different plan or plans. However, such plans, might involve other forms of reorganization or liquidation of the Debtor's operations and assets. Any other alternative plans, however, would likely result in additional administrative expenses to the Estate and would provide little to no benefit.

## E.   Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

## F.   Headings

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## G.   Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## H.   Retention of jurisdiction

Under 11 U.S.C. §§ 105(a) and 1142, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

    a.   Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim or Priority Claim or the resolution of any objections to the allowance or priority of Claims or Interest;

b. Hear and determine all applications for compensation and reimbursement of expenses of Administrative Claims;

c. Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the liquidation or allowance of any Claims arising therefrom;

d. Effectuate performance of and payments under the provisions of the Plan;

e. Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

f. Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

g. Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

h. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

i. Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

j. Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

k. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Debtor's Bankruptcy Case;

l. Hear and determine matters concerning state, local, and federal taxes in accordance with 11 U.S.C. §§ 346, 505, and 1146;

m. Hear and determine all matters related to the property of the Debtor's Bankruptcy Estate from and after the Consummation Date;

n.  Hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

o.  Enter a final decree closing the Debtor's Bankruptcy Case.

DATED: February 3, 2026.

SEQUOIA GROVE, INC.

/s/ *Martin Rafter*
By: Martin Rafter
President & CEO

*Plan Proponent*

PENDERGRAFT & SIMON, LLP

/s/ *William P. Haddock*
William P. Haddock
  Texas Bar No. 00793875
  S.D. Tex. Adm. No. 19637
Leonard H. Simon
  Texas Bar No. 18387400
  S.D. Tex. Adm. No. 8200
2777 Allen Parkway, Suite 800
Houston, TX 77019
Tel. (713) 528-8555
Fax. (713) 868-1267

*Counsel for Plan Proponent*

Exhibit A
## Sequoia Grove, Inc.
## case no. 25-35441
## Chapter 7 Liquidation Analysis
Based upon Debtor's Schedules with adjustments for Post-Petition Changes

Note

**ESTIMATED AMOUNTS RELIAZABLE FROM LIQUIDATION OF ASSETS**

| | | | |
|---|---|--:|--:|
| Cash on hand at Dec. 9, 2025 | | $  53,120.26 | a |
| | | | |
| Accounts Receivable | | | |
| Book value | $ | - | |
| less: doubtful/uncollectible | | - | - |
| | | | |
| Interests in other business entities | | | |
| Pershing Point, LLC | $ | 1.00 | |
| West Point Pool Pros, LLC | | 1.00 | 2.00 |
| | | | |
| Inventory and supplies | | | - |
| | | | |
| Real Property (1207 W. Ferguson, Humble, TX 77336) | | | 186,796.00 |
| | | | |
| Motor vehicles | | | |
| 2022 Chevrolet Silverado (VIN 3GCPABEK1NG639766) | $ | 23,250.00 | |
| 2022 Chevrolet Silverado (VIN 3GCPABEKXNG636073) | | 23,250.00 | |
| 2022 Chevrolet Colorado (VIN 1GCGSBEA8N1275932) | | 18,000.00 | |
| 2022 GMC Sierra (VIN 3GTUUGED9NG682485) | | 41,500.00 | |
| 2022 Chevrolet Colorado (VIN 1GCGSBEN3N1327597) | | 18,000.00 | |
| 2022 Chevrolet Colorado (VIN 1GCGSBEN9N1331086) | | 18,000.00 | |
| 2006 utlity trailer (VIN 17YBP2022GB059626) | | 5,000.00 | 147,000.00 |
| | | | |
| Office furniture, fixtures and equipment | | | |
| Office furniture & computers | $ | 2,500.00 | |
| Tools & equipment | | 750.00 | 3,250.00 |
| | | | |
| Intangible & intellectual property | | | - |
| DBA registration | $ | 5,000.00 | |
| Domain name | | 5,000.00 | - |
| Goodwill | | - | 10,000.00 |

| | | |
|---|---|---|
| Exhibit A | Page 1 of 2 | Liquidation Analysis |

| TOTAL ASSETS—ESTIMATED AMOUNT AVAILABLE FOR PAYMENT OF ALLOWED CLAIMS | | $    400,168.26 |
|---|---|---|

**less: PAYMENT OF SECURED AND PRIORITY CLAIMS**

Estimated Administrative Claims

| | | |
|---|---|---|
| Ch. 7 Trustee's fee allowed under 11 U.S.C. § 326 | $    35,255.05 | |
| Estimated compensation to Ch. 7 Trustee's counsel | 7,500.00 | |
| Estimated fees to Trustee's accountants | 7,500.00 | 50,255.05 |

Secured Claims

| | | |
|---|---|---|
| Property taxing authorities | $     4,882.61 | |
| Wells Fargo Bank | 269,209.59 | |
| Bank of America | 17,642.75 | |
| AmeriCredit Financial Services (acct. x0408) | 17,642.75 | |
| AmeriCredit Financial Services (acct. x8447) | 17,642.75 | |
| TD Auto Finance | 22,892.75 | $    349,913.21 |

| Priority Unsecured Claims | | - |
|---|---|---|

| Total Secured and Priority Claims | | $    50,255.05 |
|---|---|---|

| **Net Available for General Unsecured Claims** | | $      - |
|---|---|---|

**Total General Unsecured Claims**

Undersecured amounts of secured creditors

| | | |
|---|---|---|
| Wells Fargo Bank | $  1,361,824.97 | |
| Bank of America | 929.25 | |
| AmeriCredit Financial Services (acct. x0408) | 2,129.87 | |
| AmeriCredit Financial Services (acct. x8447) | 6,850.65 | |
| TD Auto Finance | 1,853.21 | |
| All other general unsecured claims | - | $  1,373,587.94 |

| **Estimated Percentage Payment to General, Unsecured Creditors** | | 0.0% |
|---|---|---|

Exhibit A                              Page 2 of 2                              Liquidation Analysis

Exhibit B
## Sequoia Grove, Inc.
## case no. 25-35441
## Post-Confirmation Projections of Disposable Income
Based upon Debtor's Schedules with adjustments for Post-Petition Changes

| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| | Jan-26 | Feb-26 | Mar-26 | Apr-26 | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 |
| Beginning Cash | $ 53,120.26 | $ 10,664.66 | $ (3,843.94) | $ 13,947.47 | $ 38,018.81 | $ 68,938.21 | $ 73,954.61 | $ 79,931.39 | $ 75,470.36 |
| Revenue from Operations | $125,000.00 | $150,000.00 | $250,000.00 | $275,000.00 | $300,000.00 | $225,000.00 | $225,000.00 | $225,000.00 | $225,000.00 |
| Cost of Goods Sold | 83,375.00 | 100,050.00 | 166,750.00 | 183,425.00 | 200,100.00 | 150,075.00 | 150,075.00 | 150,075.00 | 150,075.00 |
| Gross Profit | $ 41,625.00 | $ 49,950.00 | $ 83,250.00 | $ 91,575.00 | $ 99,900.00 | $ 74,925.00 | $ 74,925.00 | $ 74,925.00 | $ 74,925.00 |
| General & Administrative | | | | | | | | | |
| Advertising & Marketing | $ 3,850.00 | $ 4,850.00 | $ 5,350.00 | $ 5,850.00 | $ 5,850.00 | $ 5,850.00 | $ 5,850.00 | $ 5,850.00 | $ 5,350.00 |
| Banking Fees | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 |
| Business Insurance Expenses | 4,850.00 | 4,850.00 | 4,850.00 | 4,850.00 | 4,850.00 | 4,850.00 | 3,000.00 | 10,500.00 | 6,000.00 |
| Business Licenses & Permits | - | - | - | - | - | - | - | - | 30.00 |
| Charitable Donations | - | - | - | - | - | - | - | - | - |
| Computer & Internet Expenses | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 |
| Employee Training & Licensing | - | - | - | - | - | - | - | - | - |
| Health Insurance Expense | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 | 2,124.84 |
| Memberships & Subscriptions | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 2,985.00 |
| Office Supplies | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 |
| Payroll Expenses (Non-Insiders In | 38,345.00 | 35,223.00 | 35,223.00 | 35,223.00 | 38,345.00 | 35,223.00 | 38,345.00 | 35,223.00 | 35,223.00 |
| Payroll Expenses (For Insider Inclu | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 |
| Professional Fees | - | - | 250.00 | - | - | - | - | - | - |
| Rent | - | - | - | - | - | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - |
| Property Taxes for 1207 W Fergus | 1,667.06 | - | - | - | - | - | - | - | - |
| Telephone Expenses | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 |
| Travel | - | - | - | - | - | - | - | - | - |
| Uniforms & Equipment | - | - | - | - | - | - | - | - | - |
| Utilities (Water, Electricity, Trash) | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Vehicle Expenses | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 |
| Vehicle Fuel | 1,250.00 | 1,250.00 | 1,500.00 | 1,650.00 | 1,650.00 | 1,700.00 | 1,700.00 | 1,650.00 | 1,650.00 |

Exhibit B

Projections of Disposable Income

| Month | 1<br>Jan-26 | 2<br>Feb-26 | 3<br>Mar-26 | 4<br>Apr-26 | 5<br>May-26 | 6<br>Jun-26 | 7<br>Jul-26 | 8<br>Aug-26 | 9<br>Sep-26 |
|---|---|---|---|---|---|---|---|---|---|
| Vehicle Tolls | 540.00 | 540.00 | 540.00 | 540.00 | 540.00 | 540.00 | 540.00 | 540.00 | 540.00 |
| Total | $ 61,483.39 | $ 57,694.33 | $ 58,694.33 | $ 59,094.33 | $ 62,216.33 | $ 63,144.33 | $ 64,416.33 | $ 68,744.33 | $ 65,974.33 |
| Income from Operations | $ (19,858.39) | $ (7,744.33) | $ 24,555.67 | $ 32,480.67 | $ 37,683.67 | $ 11,780.67 | $ 10,508.67 | $ 6,180.67 | $ 8,950.67 |
| Estimated Fed. Income Tax | $ - | $ - | $ - | $ 2,232.38 | $ - | $ - | $ 2,232.38 | $ - | $ - |
| Net Income | $ (19,858.39) | $ (7,744.33) | $ 24,555.67 | $ 30,248.29 | $ 37,683.67 | $ 11,780.67 | $ 8,276.29 | $ 6,180.67 | $ 8,950.67 |
| **Payments Under Plan** | | | | | | | | | |
| Administrative | $ 10,000.00 | | | | | | | | |
| Priority Tax Claims | 5,832.94 | | | | | | | | |
| Class 1 - Wells Fargo (secured only) | 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 |
| Class 2 - Bank of America | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 |
| Class 3 - AmeriCredit | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 |
| Class 4 - AmeriCredit | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 |
| Class 5 - TD Auto | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 |
| Class 6 - empty class | - | - | - | - | - | - | - | - | - |
| Class 7 - Unsecured cliams | - | - | - | 3,877.44 | - | - | - | 3,877.44 | - |
| Total Plan Payments | $ 22,597.21 | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 |
| Total Cash Disbursements | $ (42,455.60) | $ (14,508.60) | $ 17,791.40 | $ 24,071.34 | $ 30,919.40 | $ 5,016.40 | $ 5,976.78 | $ (4,461.04) | $ 2,186.40 |
| Ending Cash | $ 10,664.66 | $ (3,843.94) | $ 13,947.47 | $ 38,018.81 | $ 68,938.21 | $ 73,954.61 | $ 79,931.39 | $ 75,470.36 | $ 77,656.76 |

NOTES:
1. REVENUES for 2026 aare based upon revenues from 2024 and 2025 aalong with consideraation of existing contracts currently in place.
2. COSTS OF GOODS SOLD are historically 2/3 of Revenues.
3. GENERAL & ADMINISTRATIVE expenses are based on historical amounts.
4 PROPERTY TAXES include only those aamounts not included in the Taxing Aauthorities' PRIORITY TAX CLAIMS.

Exhibit B                              Page 2 of 10                    Projections of Disposable Income

| Month | 10 Oct-26 | 11 Nov-26 | 12 Dec-26 | 13 Jan-27 | 14 Feb-27 | 15 Mar-27 | 16 Apr-27 | 17 May-27 | 18 Jun-27 |
|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $ 77,656.76 | $ 75,258.54 | $ 57,489.94 | $ 36,223.91 | $ 11,292.35 | $ (6,921.54) | $ 11,083.29 | $ 36,650.37 | $ 72,230.42 |
| Revenue from Operations | $200,000.00 | $150,000.00 | $150,000.00 | $137,500.00 | $165,000.00 | $275,000.00 | $302,500.00 | $330,000.00 | $247,500.00 |
| Cost of Goods Sold | 133,400.00 | 100,050.00 | 100,050.00 | 91,712.50 | 110,055.00 | 183,425.00 | 201,767.50 | 220,110.00 | 165,082.50 |
| Gross Profit | $ 66,600.00 | $ 49,950.00 | $ 49,950.00 | $ 45,787.50 | $ 54,945.00 | $ 91,575.00 | $100,732.50 | $109,890.00 | $ 82,417.50 |
| **General & Administrative** | | | | | | | | | |
| Advertising & Marketing | $ 4,350.00 | $ 3,850.00 | $ 3,850.00 | $ 5,311.25 | $ 5,439.11 | $ 5,490.66 | $ 5,502.96 | $ 5,472.60 | $ 5,439.58 |
| Banking Fees | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 |
| Business Insurance Expenses | 4,850.00 | 4,850.00 | 4,850.00 | 5,525.63 | 5,584.74 | 5,649.03 | 5,718.95 | 5,794.98 | 5,877.67 |
| Business Licenses & Permits | - | 110.00 | - | - | - | - | - | - | - |
| Charitable Donations | - | - | - | - | - | - | - | - | - |
| Computer & Internet Expenses | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 |
| Employee Training & Licensing | - | - | - | - | - | - | - | - | - |
| Health Insurance Expense | 2,124.84 | 2,124.84 | 2,124.84 | 2,231.08 | 2,240.38 | 2,250.49 | 2,261.48 | 2,273.44 | 2,286.44 |
| Memberships & Subscriptions | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 |
| Office Supplies | 250.00 | 250.00 | 250.00 | 262.50 | 263.59 | 264.78 | 266.08 | 267.48 | 269.01 |
| Payroll Expenses (Non-Insiders In | 38,345.00 | 35,223.00 | 35,223.00 | 38,076.85 | 38,053.39 | 38,301.05 | 38,570.37 | 38,863.27 | 38,908.62 |
| Payroll Expenses (For Insider Inclu | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 |
| Professional Fees | - | - | - | - | - | - | - | - | - |
| Rent | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - |
| Property Taxes for 1207 W Fergus | - | - | - | - | - | - | - | - | - |
| Telephone Expenses | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 |
| Travel | - | - | - | - | - | - | - | - | - |
| Uniforms & Equipment | - | - | - | - | - | - | - | - | - |
| Utilities (Water, Electricity, Trash) | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Vehicle Expenses | 750.00 | 750.00 | 750.00 | 787.50 | 790.78 | 794.35 | 798.23 | 802.45 | 807.04 |
| Vehicle Fuel | 1,400.00 | 1,400.00 | 1,250.00 | 1,579.38 | 1,608.20 | 1,639.54 | 1,651.75 | 1,651.90 | 1,652.07 |

Exhibit B                                          Page 3 of 10                                          Projections of Disposable Income

| Month | 10 Oct-26 | 11 Nov-26 | 12 Dec-26 | 13 Jan-27 | 14 Feb-27 | 15 Mar-27 | 16 Apr-27 | 17 May-27 | 18 Jun-27 |
|---|---|---|---|---|---|---|---|---|---|
| Vehicle Tolls | 540.00 | 540.00 | 420.00 | 556.50 | 557.94 | 559.51 | 561.22 | 563.08 | 565.10 |
| Total | $ 64,466.33 | $ 60,954.33 | $ 60,574.33 | $ 66,187.17 | $ 66,394.62 | $ 66,805.90 | $ 67,187.53 | $ 67,545.69 | $ 67,662.01 |
| Income from Operations | $ 2,133.67 | $ (11,004.33) | $ (10,624.33) | $ (20,399.67) | $ (11,449.62) | $ 24,769.10 | $ 33,544.97 | $ 42,344.31 | $ 14,755.49 |
| Estimated Fed. Income Tax | $ 2,232.38 | $ - | $ - | $ 2,232.38 | $ - | $ - | $ 2,663.82 | $ - | $ - |
| Net Income | $ (98.71) | $ (11,004.33) | $ (10,624.33) | $ (22,632.05) | $ (11,449.62) | $ 24,769.10 | $ 30,881.15 | $ 42,344.31 | $ 14,755.49 |
| **Payments Under Plan** | | | | | | | | | |
| Administrative | | | | | | | | | |
| Priority Tax Claims | | | | | | | | | |
| Class 1 - Wells Fargo (secured only) | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 |
| Class 2 - Bank of America | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 |
| Class 3 - AmeriCredit | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 |
| Class 4 - AmeriCredit | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 |
| Class 5 - TD Auto | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 |
| Class 6 - empty class | - | - | - | - | - | - | - | - | - |
| Class 7 - Unsecured cliams | - | - | 3,877.44 | - | - | - | 3,877.44 | - | - |
| Total Plan Payments | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 |
| Total Cash Disbursements | $ (2,398.22) | $ (17,768.60) | $ (21,266.04) | $ (24,931.56) | $ (18,213.89) | $ 18,004.84 | $ 25,567.08 | $ 35,580.04 | $ 7,991.23 |
| Ending Cash | $ 75,258.54 | $ 57,489.94 | $ 36,223.91 | $ 11,292.35 | $ (6,921.54) | $ 11,083.29 | $ 36,650.37 | $ 72,230.42 | $ 80,221.64 |

Exhibit B

Projections of Disposable Income

| Month | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
|---|---|---|---|---|---|---|---|---|---|
| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 |
| Beginning Cash | $ 80,221.64 | $ 90,481.39 | $ 93,881.29 | $101,190.88 | $101,604.34 | $ 80,664.50 | $ 55,123.05 | $ 30,732.95 | $ 13,361.27 |
| Revenue from Operations | $247,500.00 | $247,500.00 | $247,500.00 | $220,000.00 | $165,000.00 | $165,000.00 | $151,250.00 | $181,500.00 | $302,500.00 |
| Cost of Goods Sold | 165,082.50 | 165,082.50 | 165,082.50 | 146,740.00 | 110,055.00 | 110,055.00 | 100,883.75 | 121,060.50 | 201,767.50 |
| Gross Profit | $ 82,417.50 | $ 82,417.50 | $ 82,417.50 | $ 73,260.00 | $ 54,945.00 | $ 54,945.00 | $ 50,366.25 | $ 60,439.50 | $100,732.50 |
| **General & Administrative** | | | | | | | | | |
| Advertising & Marketing | $ 5,403.66 | $ 5,364.61 | $ 5,322.14 | $ 5,319.70 | $ 5,404.55 | $ 5,540.57 | $ 5,688.50 | $ 5,721.50 | $ 5,746.21 |
| Banking Fees | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 |
| Business Insurance Expenses | 5,967.59 | 6,227.25 | 5,853.39 | 5,840.56 | 5,927.23 | 6,021.49 | 6,123.99 | 6,176.35 | 6,228.12 |
| Business Licenses & Permits | - | - | - | - | - | - | - | - | - |
| Charitable Donations | - | - | - | - | - | - | - | - | - |
| Computer & Internet Expenses | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 |
| Employee Training & Licensing | - | - | - | - | - | - | - | - | - |
| Health Insurance Expense | 2,300.58 | 2,315.96 | 2,332.68 | 2,350.87 | 2,370.64 | 2,392.15 | 2,415.54 | 2,431.68 | 2,448.42 |
| Memberships & Subscriptions | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 |
| Office Supplies | 270.68 | 272.49 | 274.45 | 276.59 | 278.92 | 281.45 | 284.20 | 286.10 | 288.07 |
| Payroll Expenses (Non-Insiders In | 39,231.11 | 39,308.64 | 39,666.14 | 40,054.91 | 40,204.53 | 40,640.41 | 41,114.44 | 41,380.23 | 41,671.33 |
| Payroll Expenses (For Insider Inclu | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 |
| Professional Fees | - | - | - | - | - | - | - | - | - |
| Rent | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - |
| Property Taxes for 1207 W Fergus | - | - | - | - | - | - | - | - | - |
| Telephone Expenses | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 |
| Travel | - | - | - | - | - | - | - | - | - |
| Uniforms & Equipment | - | - | - | - | - | - | - | - | - |
| Utilities (Water, Electricity, Trash) | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Vehicle Expenses | 812.03 | 817.46 | 823.36 | 829.78 | 836.76 | 844.35 | 852.61 | 858.31 | 864.21 |
| Vehicle Fuel | 1,647.87 | 1,643.31 | 1,642.73 | 1,642.09 | 1,663.27 | 1,686.31 | 1,724.48 | 1,737.18 | 1,748.47 |

Exhibit B                                                Page 5 of 10                                    Projections of Disposable Income

| Month | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
|---|---|---|---|---|---|---|---|---|---|
| | Jul-27 | Aug-27 | Sep-27 | Oct-27 | Nov-27 | Dec-27 | Jan-28 | Feb-28 | Mar-28 |
| Vehicle Tolls | 567.29 | 569.68 | 572.28 | 575.10 | 578.17 | 581.52 | 595.65 | 599.07 | 602.67 |
| Total | $ 68,057.30 | $ 68,375.89 | $ 68,343.65 | $ 68,746.09 | $ 69,120.57 | $ 69,844.74 | $ 70,655.90 | $ 71,046.92 | $ 71,453.99 |
| Income from Operations | $ 14,360.20 | $ 14,041.61 | $ 14,073.85 | $ 4,513.91 | $ (14,175.57) | $ (14,899.74) | $ (20,289.65) | $ (10,607.42) | $ 29,278.51 |
| Estimated Fed. Income Tax | $ 2,663.82 | $ - | $ - | $ 2,663.82 | $ - | $ - | $ 2,663.82 | $ - | $ - |
| Net Income | $ 11,696.38 | $ 14,041.61 | $ 14,073.85 | $ 1,850.09 | $ (14,175.57) | $ (14,899.74) | $ (22,953.47) | $ (10,607.42) | $ 29,278.51 |
| Payments Under Plan | | | | | | | | | |
| Administrative | | | | | | | | | |
| Priority Tax Claims | | | | | | | | | |
| Class 1 - Wells Fargo (secured only) | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 |
| Class 2 - Bank of America | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 |
| Class 3 - AmeriCredit | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 |
| Class 4 - AmeriCredit | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 |
| Class 5 - TD Auto | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 |
| Class 6 - empty class | - | - | - | - | - | - | - | - | - |
| Class 7 - Unsecured cliams | - | 3,877.44 | - | - | - | 3,877.44 | - | - | - |
| Total Plan Payments | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 | $ 6,764.27 |
| Total Cash Disbursements | $ 10,259.75 | $ 3,399.90 | $ 7,309.58 | $ 413.46 | $ (20,939.84) | $ (25,541.45) | $ (24,390.10) | $ (17,371.68) | $ 22,514.24 |
| Ending Cash | $ 90,481.39 | $ 93,881.29 | $101,190.88 | $101,604.34 | $ 80,664.50 | $ 55,123.05 | $ 30,732.95 | $ 13,361.27 | $ 35,875.51 |

Exhibit B                                      Page 6 of 10                                      Projections of Disposable Income

| Month | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 |
|---|---|---|---|---|---|---|---|---|---|
| | Apr-28 | May-28 | Jun-28 | Jul-28 | Aug-28 | Sep-28 | Oct-28 | Nov-28 | Dec-28 |
| Beginning Cash | $ 35,875.51 | $ 67,632.64 | $109,477.77 | $120,689.81 | $134,916.30 | $141,368.38 | $151,243.82 | $156,034.77 | $136,720.55 |
| Revenue from Operations | $332,750.00 | $363,000.00 | $272,250.00 | $272,250.00 | $272,250.00 | $272,250.00 | $242,000.00 | $181,500.00 | $181,500.00 |
| Cost of Goods Sold | 221,944.25 | 242,121.00 | 181,590.75 | 181,590.75 | 181,590.75 | 181,590.75 | 161,414.00 | 121,060.50 | 121,060.50 |
| Gross Profit | $110,805.75 | $120,879.00 | $ 90,659.25 | $ 90,659.25 | $ 90,659.25 | $ 90,659.25 | $ 80,586.00 | $ 60,439.50 | $ 60,439.50 |
| General & Administrative | | | | | | | | | |
| Advertising & Marketing | $ 5,768.58 | $ 5,791.82 | $ 5,819.75 | $ 5,853.01 | $ 5,892.33 | $ 5,938.51 | $ 5,992.44 | $ 6,051.30 | $ 6,107.90 |
| Banking Fees | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 | 875.00 |
| Business Insurance Expenses | 6,278.79 | 6,327.77 | 6,374.39 | 6,417.85 | 6,457.25 | 6,477.38 | 6,531.98 | 6,592.48 | 6,650.69 |
| Business Licenses & Permits | - | - | - | - | - | - | - | - | - |
| Charitable Donations | - | - | - | - | - | - | - | - | - |
| Computer & Internet Expenses | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 | 167.83 |
| Employee Training & Licensing | - | - | - | - | - | - | - | - | - |
| Health Insurance Expense | 2,465.74 | 2,483.61 | 2,502.00 | 2,520.86 | 2,540.14 | 2,559.76 | 2,579.62 | 2,599.64 | 2,619.68 |
| Memberships & Subscriptions | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 | 785.00 |
| Office Supplies | 290.11 | 292.21 | 294.38 | 296.59 | 298.86 | 301.17 | 303.51 | 305.86 | 308.22 |
| Payroll Expenses (Non-Insiders Inc | 41,966.23 | 42,263.36 | 42,560.87 | 42,880.44 | 43,199.76 | 43,540.23 | 43,879.22 | 44,213.84 | 44,564.66 |
| Payroll Expenses (For Insider Inclu | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 | 5,382.50 |
| Professional Fees | - | - | - | - | - | - | - | - | - |
| Rent | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| Repairs & Maintenance | - | - | - | - | - | - | - | - | - |
| Property Taxes for 1207 W Fergus | - | - | - | - | - | - | - | - | - |
| Telephone Expenses | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 | 296.16 |
| Travel | - | - | - | - | - | - | - | - | - |
| Uniforms & Equipment | - | - | - | - | - | - | - | - | - |
| Utilities (Water, Electricity, Trash) | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 |
| Vehicle Expenses | 870.33 | 876.64 | 883.13 | 889.78 | 896.59 | 903.51 | 910.52 | 917.59 | 924.66 |
| Vehicle Fuel | 1,758.00 | 1,767.30 | 1,777.39 | 1,788.36 | 1,800.65 | 1,814.42 | 1,829.44 | 1,845.84 | 1,861.81 |

| Month | 28 Apr-28 | 29 May-28 | 30 Jun-28 | 31 Jul-28 | 32 Aug-28 | 33 Sep-28 | 34 Oct-28 | 35 Nov-28 | 36 Dec-28 |
|---|---|---|---|---|---|---|---|---|---|
| Vehicle Tolls | 606.45 | 610.41 | 614.55 | 618.87 | 623.39 | 628.09 | 632.97 | 638.03 | 643.27 |
| Total | $ 71,860.70 | $ 72,269.60 | $ 72,682.95 | $ 73,122.28 | $ 73,565.46 | $ 74,019.55 | $ 74,516.19 | $ 75,021.08 | $ 75,537.37 |
| | | | | | | | | | |
| Income from Operations | $ 38,945.05 | $ 48,609.40 | $ 17,976.30 | $ 17,536.97 | $ 17,093.79 | $ 16,639.70 | $ 6,069.81 | $ (14,581.58) | $ (15,097.87) |
| | | | | | | | | | |
| Estimated Fed. Income Tax | $ 3,453.79 | $ - | $ - | $ 3,453.79 | $ - | $ - | $ 3,453.79 | $ - | $ - |
| | | | | | | | | | |
| Net Income | $ 35,491.26 | $ 48,609.40 | $ 17,976.30 | $ 14,083.18 | $ 17,093.79 | $ 16,639.70 | $ 2,616.02 | $ (14,581.58) | $ (15,097.87) |
| | | | | | | | | | |
| Payments Under Plan | | | | | | | | | |
| Administrative | | | | | | | | | |
| Priority Tax Claims | | | | | | | | | |
| Class 1 - Wells Fargo (secured only | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 | $ 4,204.12 |
| Class 2 - Bank of America | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | 552.70 | - | - | - |
| Class 3 - AmeriCredit | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 | 528.53 |
| Class 4 - AmeriCredit | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | 740.91 | - | - | - |
| Class 5 - TD Auto | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | 738.01 | - | - | - |
| Class 6 - empty class | - | - | - | - | - | - | - | - | - |
| Class 7 - Unsecured cliams | 3,877.44 | - | - | - | 3,877.44 | - | - | - | 3,877.44 |
| | | | | | | | | | |
| Total Plan Payments | $ 10,641.71 | $ 6,764.27 | $ 6,764.27 | $ 6,764.27 | $ 10,641.71 | $ 6,764.27 | $ 4,732.65 | $ 4,732.65 | $ 8,610.09 |
| | | | | | | | | | |
| Total Cash Disbursements | $ 31,757.13 | $ 41,845.13 | $ 11,212.04 | $ 14,226.50 | $ 6,452.08 | $ 9,875.43 | $ 4,790.95 | $ (19,314.22) | $ (23,707.96) |
| | | | | | | | | | |
| Ending Cash | $ 67,632.64 | $109,477.77 | $120,689.81 | $134,916.30 | $141,368.38 | $151,243.82 | $156,034.77 | $136,720.55 | $113,012.59 |

Exhibit B                                        Page 8 of 10                              Projections of Disposable Income

| Month | Months 1–12 | Months 12–24 | Months 25–36 | Months 1–36 |
|---|---|---|---|---|
| Beginning Cash | | | | |
| | | | | |
| Revenue from Operations | $ 2,500,000.00 | $ 2,750,000.00 | $ 3,025,000.00 | $ 8,275,000.00 |
| Cost of Goods Sold | 1,667,500.00 | 1,834,250.00 | 2,017,675.00 | 5,519,425.00 |
| | | | | |
| Gross Profit | $ 832,500.00 | $ 915,750.00 | $ 1,007,325.00 | $ 2,755,575.00 |
| | | | | |
| General & Administrative | | | | |
| Advertising & Marketing | $ 60,700.00 | $ 65,011.38 | $ 70,371.85 | $ 196,083.23 |
| Banking Fees | 10,500.00 | 10,500.00 | 10,500.00 | 31,500.00 |
| Business Insurance Expenses | 63,150.00 | 69,988.49 | 76,637.03 | 209,775.52 |
| Business Licenses & Permits | 140.00 | - | - | 140.00 |
| Charitable Donations | - | - | - | - |
| Computer & Internet Expenses | 2,013.96 | 2,013.96 | 2,013.96 | 6,041.88 |
| Employee Training & Licensing | - | - | - | - |
| Health Insurance Expense | 25,498.08 | 27,606.19 | 30,166.70 | 83,270.97 |
| Memberships & Subscriptions | 11,620.00 | 9,420.00 | 9,420.00 | 30,460.00 |
| Office Supplies | 3,000.00 | 3,248.03 | 3,549.29 | 9,797.32 |
| Payroll Expenses (Non-Insiders In | 435,164.00 | 469,879.30 | 513,234.60 | 1,418,277.90 |
| Payroll Expenses (For Insider Inclu | 64,590.00 | 64,590.00 | 64,590.00 | 193,770.00 |
| Professional Fees | 250.00 | - | - | 250.00 |
| Rent | 28,000.00 | 48,000.00 | 48,000.00 | 124,000.00 |
| Repairs & Maintenance | - | - | - | - |
| Property Taxes for 1207 W Fergus | 1,667.06 | - | - | 1,667.06 |
| Telephone Expenses | 3,553.92 | 3,553.92 | 3,553.92 | 10,661.76 |
| Travel | - | - | - | - |
| Uniforms & Equipment | - | - | - | - |
| Utilities (Water, Electricity, Trash) | 4,200.00 | 4,200.00 | 4,200.00 | 12,600.00 |
| Vehicle Expenses | 9,000.00 | 9,744.09 | 10,647.87 | 29,391.97 |
| Vehicle Fuel | 18,050.00 | 19,708.40 | 21,453.35 | 59,211.74 |

Exhibit B                                   Page 9 of 10                    Projections of Disposable Income

| Month | Months 1–12 | Months 12–24 | Months 25–36 | Months 1–36 |
|---|---|---|---|---|
| Vehicle Tolls | 6,360.00 | 6,807.40 | 7,413.41 | 20,580.81 |
| Total | $ 747,457.02 | $ 814,271.16 | $ 875,751.99 | $ 2,437,480.17 |
| Income from Operations | $ 85,042.98 | $ 101,478.84 | $ 131,573.01 | $ 318,094.83 |
| Estimated Fed. Income Tax | $ 6,697.13 | $ 10,223.84 | $ 13,025.19 | $ 29,946.17 |
| Net Income | $ 78,345.85 | $ 91,255.00 | $ 118,547.82 | $ 288,148.66 |
| Payments Under Plan | | | | |
| Administrative | $ 10,000.00 | | | $ 10,000.00 |
| Priority Tax Claims | 5,832.94 | | | 5,832.94 |
| Class 1 - Wells Fargo (secured only) | 50,449.41 | $ 50,449.41 | $ 50,449.41 | 151,348.23 |
| Class 2 - Bank of America | 6,632.40 | 6,632.40 | 4,974.30 | 18,239.10 |
| Class 3 - AmeriCredit | 6,342.36 | 6,342.36 | 6,342.36 | 19,027.08 |
| Class 4 - AmeriCredit | 8,890.92 | 8,890.92 | 6,668.19 | 24,450.03 |
| Class 5 - TD Auto | 8,856.12 | 8,856.12 | 6,642.09 | 24,354.33 |
| Class 6 - empty class | - | - | - | - |
| Class 7 - Unsecured cliams | 11,632.32 | 11,632.32 | 11,632.32 | 34,896.95 |
| Total Plan Payments | $ 108,636.47 | $ 92,803.53 | $ 86,708.67 | $ 288,148.66 |
| Total Cash Disbursements | | | | |
| Ending Cash | | | | |